## THE EARNWELL.

### THE EARNWELL et al. v. MARSHALL.

(Circuit Court of Appeals, Third Circuit. October 31, 1895.)

#### No. 10.

1. PILOTS—OFFER OF SERVICES—OBLIGATION TO ACCEPT.

A steamship coming into Delaware Bay by way of Cape Henlopen, and bound for Philadelphia, is obliged, under the Delaware statute (April 5, 1881, § 5), to accept the first available pilot who offers his services; and if she refuses him, and takes another, who at the time was further

away, she is nevertheless liable to the former for his fees. 68 Fed. 229, affirmed.

2. SAME—FOREIGN VESSEL ON HIGH SEAS.

The question whether a foreign vessel is bound by the compulsory pilotage laws of a state, where the tender of services is made upon the high seas, does not arise where the evidence conclusively shows that the offer was made within three miles of the shore.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

This was a libel by William F. Marshall, a licensed pilot, against the steamship Earnwell, to recover pilotage fees, alleging that she refused to accept his services when offered. The district court rendered a decree in favor of libelant for the sum claimed (68 Fed. 229), and the Earnwell Steamship Company, Limited, claimants of the vessel, appealed.

Henry R. Edmunds, for appellants.

Henry Flanders, for appellee.

Before ACHESON and DALLAS, Circuit Judges.

ACHESON, Circuit Judge. William F. Marshall, a pilot duly licensed under the laws of the state of Delaware, filed a libel in the court below against the steamship Earnwell to recover for pilotage due under an act of assembly of the state of Delaware approved April 5, 1881, which provides as follows:

"Sec. 5. That every ship or vessel, propelled by steam or sails arriving from or bound to any foreign port or place, except American vessels whose cargoes are exclusively of coal mined in the United States, passing in or out of the Delaware Bay, by the way of Cape Henlopen, shall be obliged to receive a pilot * * * and if the master of any of the said ships or vessels after she is spoken or a pilot offered shall refuse or neglect to take a pilot, the master, owner, or consignee of such vessel shall forfeit and pay to any such pilot suing for the same a sum equal to the pilotage of such ship or vessel; * * * or such pilot may pursue his remedy therefor by a libel in admiralty in any United States district court, either in personam or by proceeding in rem to enforce the lien hereby given him on such ship or vessel * * *.

"Sec. 6. That the pilot who shall first offer himself to any inward bound ships or vessels, shall be entitled to take charge thereof."

The libel charged, that on the morning of the 3d day of February, 1894, the libelant offered himself to pilot the Earnwell, a foreign vessel, passing into the Delaware Bay by the way of Cape Henlopen, on a voyage from Matanzas, Cuba, and bound to the port of Philadelphia; that the Earnwell neglected and refused to take the libelant as her pilot, and proceeded on her voyage, and to her destination, without allowing him to board her. The original answer, upon which the case went to hearing, raised the single issue whether the libelant withdrew his offer of service, thus releasing the Earnwell. The answer alleged as follows:

"At about 5:45 o'clock a. m. of the 3d day of February, A. D. 1894, the steamship Earnwell passed Fenwick's Island light, bound in, and her course was set for Cape Henlopen. At daybreak there were three pilot boats in sight,—one about six miles to the eastward; another about four miles northeastwardly, and the third about north, distant about four miles; the latter

standing directly across the track of the steamer. The libelant was on the boat named above as being northeastwardly, and was out of the track of the steamer. That, shortly after sighting the said boats, libelant's boat signaled by hoisting her flag, and continued coming towards the steamer; but when within one and a half miles from the steamer, for some cause unknown to deponent, she hauled down her signal, and sailed away, thus preventing the Earnwell from accepting the service. The steamer continued on her course until she intercepted the boat whose course was above given as north, from which a duly-licensed pilot was taken."

The defense that the libelant thus withdrew his offer of service wholly failed. It was unsupported by any evidence. It was shown that the libelant's pilot boat kept her signal flag up until after the Earnwell had passed across her bow, and practically had refused the libelant's offer. Such was the finding of the court below. The court, however, did not hold the respondent strictly to the pleadings, but examined the proofs to see whether they afforded the Earnwell any justification for her conduct. The court found that the libelant's pilot boat (the Bayard) and the pilot boat (the Cope) from which the pilot was taken were similarly situated with respect to the Earnwell, and alone were available to her; that the Earnwell could have taken a pilot as readily from one as from the other; that she would not have suffered materially more delay in taking the libelant than she did in taking a pilot from the Cope; that the libelant tendered his services by the usual signal, which the Earnwell understood; and that the Cope did not tender a pilot at all, not expecting to be employed, because of the tender of a pilot already made by the Bayard. These findings were fully warranted by the evidence, and certainly they brought the libelant's case within the provisions of the statute of Delaware, as the court below held.

After the opinion of the court was filed, but before decree entered, an amendment to the answer was allowed, which avers as follows:

"That this respondent has been advised, and now alleges, that the pilotage law of the state of Delaware cannot affect the rights of respondent's steamer to accept or refuse pilots at a place upon the high seas, and that the alleged place of hail or speaking was upon the high seas. That the said steamship Earnwell being a British steamer, upon the high seas, outside the limit of any particular state, no law, either of the United States or of any of the individual states, can affect her right to accept or reject a pilot at the place mentioned."

We are of opinion, however, that the question presented by this amendment does not arise upon the proofs, for it clearly appears therefrom that the offer of services as pilot by the libelant was made within the three-mile limit. The positive and uncontradicted testimony is that at the time the Earnwell passed the bow of the pilot boat, the Bayard, the latter was not over three miles distant from Cape Henlopen, and the Earnwell was from one-quarter to one-half mile nearer the cape than the Bayard. We find no error in this record, and accordingly the decree of the court below is affirmed.